Chief Justice Robertson,
delivered'the opinion of the Court.
The plaintiffs prosecute this writ of error, to reverse a verdict and judgment, obtained against them in the circuit, court in an action of trover and conversion af a slave (Royal,) whom the defendant had purchased at a sheriff’s sale, under a fieri facias against Samuel Rousee, as administrator of William Wooldridge, deceased, and whom the plaintiffs claimed as their property, at the time of the sale.
At the instance of the defendant, (who was also defendant in the circuit cou'rt,) the jury was instructed in effect, to find for him, unless they should believe that Royal was born after the date of William Rousee’s will, published in Virginia, in 1811, and in which he devised to the wife of William Wooldridge, (who was the mother of the plaintiffs,) a female slave (Hannah) and uher increase” during life, and to the plaintiffs (the grand children of the testator) the residuary interest in the same slave, (Hannah) and her Ufuture increaseand, after making other specific devisees, gave to Mrs. Wooldridge, Samuel Rousee, and Phoebe Rousee, the residue of his estate. Royal was a child of the slave Hannah, and was born on the testator’s farm about eight months prior to the publication of his will, but had never been in his actual possession. This instruc *411 tlon amounted, virtually, to a direction to find as in case of a nonsuit, and presents the most important and comprehensive oí tlie many points relied on, for a reversal of the judgment.
Devise of yfu-tur'1 increase” does not pass any child born piinr to the date of the will.
The interest of wife in slave, vests absolutely in husband, possession.
If by any pos ] sible deduction from facts proved on trial, a right of action might be sustained; error lojinstruct as in case of non-suit, absolutely.
It cannot be seriously doubted that, whatever may have been the actual intention of the testator, respecting the disposition ol Royal, his will, when subjected to any authorized process'of interpretation, vested the entire right to Uiut slave, either in Mrs. Wooldridge for life, and in the residuary devisees after her death, or in the latter persons in the first instance. The devise (to the childien) of the “future increase” cannot, of itself, embrace increase which had accrued prior to the date of the will. Royal did not pass by that devise: and the whole tenor of the will is consistent with this conclusion.
It is not material to determine whether Royal passed to Mrs. Wooldridge for life, or immediately to herself and the other two residuary devisees absolutely — for, in either event her interest vested by operation of law, in her husband, as he was in the actual possession. The plaintiffs, therefore, derived no right to Royal from the will.
But if, by any allowable deduction from the facts proved on the trial, a cause of action might be sustained by the plaintiffs, the instruction of the court was erroneous, otherwise it was right. We shall therefore briefly examine the facts. They are, so far as a jury might have been permitted to consider them, the following: In 1802, William Rousee (the testator) loaned to William Wooldridge, (shortly after his intermarriage with his daughter) Hannah, the mother of Royal, and at the expiration of four years took her back, and placed another slave in her place —but in 1809, returned Hannah to Wooldridge, who retained the possession ever afterwards (until his death in December, 1815) of Hannah and of Royal, who was bor.i sometime in 1810. Wooldridge removed with his faintly, from Virginia to Kentucky, in the spring of 1811, and arrived at the place of his destination in May of that year. Mrs. Wooldridge died in 1814. Wooldridge sometime not long pri- or to his death, stated that Hannah and her children *412 belonged to his children, in consequence of a gift by their grand father Rousee. After the death of Wiiliana Wooldriflge, S. Rousee as his administrator returned an inventory of his estate, including Royal, and afterwards, a sale bill including the price which Beasly had given. In thei'fall of the year 181G, Phoebe Rousee took Royal into her possession, as the property of the then infant children of Wooldridge, whom she kept with her, and for whom she acted as voluntary guardian, and she retained tile possession of Royal until about two weeks before the sheriff levied the executions on him, as assets in the hands of Wooldridge’s administrator, at whose instance the 'levy was made, whilst Royal was, in consequence of his request to that effect, at his own house on a visit. The defendant bought Royal for an adequate price, at the sheriff’s sale, in 1817, and has ever since had him in his possession.
For the slot-I Dig. finito operate to render slave jeot'ro credit- or nf bailee, tbere must be Hnuedttpos°"l t>ion in Kentucky ¡posses- or°«tate"can" not be taken to possession sn íto ekey’ ont” the iimitation.
The defendant’s counsel insists that, even if the plaintiffs had any right to Royal, he was subject to execution for Wooldridge’s debts, in consequence of the statute of frauds (I Dig. 617.) But we enlertn’n a different opinion, unless Royal should be deemed, to have been in the possession'of Wooktridges administrator, from the death of Wooldridge, unt^ the kill of the year 1 SI o; and whether Royal was, during that time, in the possession of the administrator, or of the plaintiffs, docs not appear certainly, and therefore should not have been decided either way by the circuit court, but should have been left to the consideration of the jury. Wherefore, *n consklering the point as now presented, the statute °* frauds does riot apply, unless Wooldridge’s possession in Virginia, can be connected with his possession in Kentucky, so as to complete five years possession under the loan; for, as Wooldridge had .not been five years in Kentucky when he died, and as the circuit court had not the right to decide for the jury, from the facts that the administrator, or any other person held Royal under Wooldridge’s title, until the fall of 181G, it is evident that the statute of frauds cannot sustain the instruction, unless it should be applied to a possession out of this state. The language of the statute is sufficiently compre? *413 Jjensivc to embrace a possession any where. But we will not presume that the legislature intended that the statute of frauds, or any parl-of it, should operate on any fact, occurring beyond the territorial limits of Kentucky.
Lex loci posscssionis ilciprir.i u-s tlie consequ éticos o< possession under Joan, and Uio Jaw of Kentucky regulates the liability ot property to ose cution.
Possossiuii sufficient to maintain action v=, wrongdoer, but not against one having the color of title.
The lex loci possessionis, like the lex loci contractus, ■should alone determine the legal consequences of possession, under a loan. If- the law of Virginia did not subject the lender’s right to the satisfaction of the debts of the borrower’s creditors, the loan in Virginia, and the possession under it in that state, should not have that effect in Kentucky. We therefore understand the statute of frauds, as operating on the possession in this state only. The law of Virginia cannot operate on the case 1st; because there had not been five years continued possession, under the loan, in that state; and 2nd; because a possession of even five years or more would not, as between the parties to the loan, have affected the rigid of property, but would have operated only so far as to allow a creditor of the borrower, to levy an execution on the slave, and sell him; but the huv of Kentucky must alone determine, what property is subject to execution in this state — and, had there been, no Jaw of this state on the subject, the creditors of Wooldridge would not have been permitted to levy their excutions on the slave, merely because they might have done so in Virginia. Consequently, as it was not conclusively proved that there had been five years possession by Wooldridge, and by those holding under him in this state, the statute of frauds of Kentucky does not, of itself, sustained the instruction of the circuit court.
But, nevertheless, the instruction may he maintained, unless the possession by the plaintiffs was insufficient without other evidence of title, to sustain their action, or* unless the jury would have hada right to infer from the facts, that the plaintiffs had acquired the title by gift or purchase from the devisees.
We are disposed to think that the plaintiffs were not in the actual possession of the slave, when the execution was levied on him ; but, if they were, stil1. that alone would not maintain their action, because *414 the defendant was a bona fide purchaser of Wooldridge’s right, as husband, and as residuary devisee, and, should not therefore, be deemed a -wrong-doer against whom the fact of possession would alone authorize a recovery of damages, and consequently, some title in the plaintiffs, is indispensable to the maintenance of their action.
Efíectof 41st s -5. of an act oi;1798,II Dig.11j8,
Acquiescence of parent in chililren’s claim neither conclados his creditors, nor bars him or his admr’s or executor* from asserting right to the property,
There is no pretence for claiming any right of Royal, from William Rousee, to the plaintiffs; unless they could derive title from the will. Nor is there any reason for infering a gift or sale from the resicuary devisees prior to the death of William Wooldridge. Indeed, it is quite manifest that the only claim ever asserted by or for the plaintiffs, was that which it was supposed the will of William Rousee gave them': and even if the residuary devisees had, whilst William Wooldridge retained the possession, given Royal to the plaintiffs, no title would have passed, unless there had been record proof of the gift, as required by the 41st section of an act of 1198, (2nd Digest, 1158.) See Pyle vs. Maulding (lately decided.)
If, by the will, or otherwise, the absolute right of Royal vested in Mrs. Wooldridge, and consequently passed to her. husband by operation of law, there is nothing in the proof that would have authorized the jury to infer a iransjer of that title to the plaintiffs, so as to affect the defendant. The utmost that could have been inferred from the facts, was an acquiesence by William Wooldridge, in his children’s claim (as asserted under the will) and by his administrator, some time after his death. But, even that did not divest Wooldridge or his administrator of any legal right which either of them may have had; nor would it have prevented the administrator from successfully asserting that right. So, if the title passed by the will, to William Wooldridge, Samttel Rousee and Phoebe Rousee as residuary devisees, the utmost that the facts would have allowed the jury to infer, was a similar acquiesence by Samuel Rousee for himself, and as Wooldridge’s administrator; and, which alone, would not have prevented him lrorn resisting the claim of the plaintiffs, or from subjecting the right of Wooldridge and of himself (as he in effect *415 did) to sale under execution, against him, as administrator, an effectual sale or gift by him to the plaintiffs, could not have been inferred from every thing that was proved. And, therefore, if the title passed by the will to the residuary devisees, the plaintiffs failed to shew any cause of action for at least two thirds of Royal. For they not only did not prove any absolute right, but failed to shew any special property, resulting from bailment or otherwise, in those two thirds.
0ne tenant tn n°™m¡Xtíiin an action of trover against th”mereuse of the entire chattel, there oi-'vittual destruction of the Pr°Perty«
Not error to teribot SectiLtedoifaV error of the
As to the interest of Phoebe Rousee, (if she had any interest) the facts may possibly have authorised such a deduction as might have vested her right either absolutely or specially in the plaintiffs. But, whether they did or not, we shall not now decide, because, were it conceded, that quoad hoc, the plaintiffs had some right, it could not have been more jhan that of tenants in common with the defendant. And, although it is said in Wilson and Gibbs vs. Reed (III Johnson’s Reports, 176,) that a tenant in common may maintain trover against his co-tenant for úsale of their chattel, it cannot be doubted that, according to the settled doctrine of the law, the plaintiffs, even if they could have been considered tenants in common with the defendant, could not have maintained trover against him for using the entire slave as his own, and withholding him and all his profits from them. Nothing but an actual or virtual destruction of the property-would have sustained trover for the one third of his value.
Wherefore, it seems to this court, that the circuit court did not err in giving the instruction which we have been considering.
We are-also clearly of the opinion, that the circuit court did not err, in setting aside a verdict rendered on a former trial, in favor of the plaintiffs, in consequence of an erroneous opinion given to the jury by the court, in telling them that the defendant’s dence did not “conduce” to sustain his plea of not guilty, when, in our opinion, it tended almost as strongly then, as it does now to defeat the action.
As the foregoing view of the case would, if applied properly to all the other points presented in *416 ^’c re!'0)'(b shew that there is no error, we shall not protract this opinion by a particular consideration of those several points.
.Monroe y for plaintiffs; Richardson, for defendants.
Wherefore, as we have not been able, on a thorough examination of all the facts in the record, and a reduction of them to their true and legitimate effect, to detect any error of which the plaintiffs have any just cause to complain, and as we are satisfied that the verdict was such as it ought to have been upon the proof as exhibited, the judgment of the circuit court must be affirmed.